Filed 5/30/14  P. v. Zepeda CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JAIME LEDESMA ZEPEDA,<br><br>Defendant and Appellant. | F065826<br><br>(Super. Ct. No. MF008957A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Cory J. Woodward and Michael E. Dellostritto, Judges.[*]

Aaron Williams, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Stephen G. Herndon, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

[*]     Judge Dellostritto heard and ruled on the motion pursuant to *Pitchess v. Superior Court* (1974) 11 Cal.3d 531; Judge Woodward presided over the trial.

A jury convicted appellant, Jaime Ledesma Zepeda, an inmate at the California Correctional Institution located in Tehachapi (CCI Tehachapi), of possessing a sharp instrument. He argues the judgment must be reversed because the prosecutor improperly commented on his exercise of his right to remain silent. We need not decide if the prosecutor's comment was improper because, even if we were to assume it was improper, Zepeda did not suffer any prejudice as a result of the perceived error. Finally, Zepeda asks us to review the documents produced in response to his motion for disclosure of the correctional officer's personnel file to determine if the trial court erred when it denied his motion for discovery. We have reviewed the documents and conclude the trial court did not abuse its discretion.

## FACTUAL AND PROCEDURAL SUMMARY

The sole count of the information charged Zepeda with violation of Penal Code section 4502, subdivision (a),[1] possession of a sharp instrument while incarcerated in prison. The information also alleged Zepeda had suffered a prior strike conviction within the meaning of section 667, subdivisions (b) through (i).

The prosecution's primary witness was Correctional Officer Eric Sandt. Sandt works at CCI Tehachapi. On February 15, 2009, Sandt searched Zepeda's cell and discovered a two-inch long, inmate-manufactured weapon made of metal, as well as a needle. A magnet was used to attach the items to the bottom of the upper bunk.

Sandt previously had encountered Zepeda in 2005. When Zepeda was transferred to CCI Tehachapi, he brought with him more personal belongings than were permitted at the facility. Prison regulations require excess personal belongings either be shipped to an address provided by the inmate at his expense or disposed of by the facility. Sandt attempted to obtain from Zepeda an address where the excess property could be shipped. Zepeda refused to provide an address. Later, Zepeda filed a small claims action for the

---

[1]All further statutory references are to the Penal Code.

2.

value of the property. Sandt was a named defendant in the small claims action, as was CCI Tehachapi.

Brian Snider is the litigation coordinator at CCI Tehachapi. His testimony covered two relevant topics.[2] The first topic was the small claims action filed by Zepeda as a result of the loss of his property. Snider explained he is responsible for gathering evidence and representing the prison when it or its employees are sued in small claims court. He recalled the suit filed by Zepeda, and he represented Sandt and the prison in the action. The prison prevailed.

The second topic addressed by Snider was the inmate appeal process. Snider explained that if an inmate feels something is adversely affecting him, he may file an appeal. Among the types of action that can be appealed is a disciplinary violation. Snider had reviewed the appeals filed by Zepeda and had not found any that pertained to this incident.

The prosecutor asserted in closing that the undisputed evidence established Zepeda was guilty of the charged crime. Defense counsel asserted there were sufficient inconsistencies in Sandt's testimony that he must have been lying, and he must have placed the evidence in Zepeda's cell as revenge for the small claims actions filed by Zepeda.

The jury found Zepeda guilty as charged, and in a bifurcated trial found true the allegation he had suffered a prior conviction within the meaning of section 667, subdivisions (b) through (i).

---

[2]Snider also established Zepeda was assigned to the cell in which the weapon was found, and he did not have a cellmate at that time. Zepeda did not present any evidence to dispute these facts.

DISCUSSION

## I.       Improper Comment On Right to Remain Silent

Snider testified he reviewed the records of inmate appeals and found that Zepeda did not appeal the disciplinary action filed as a result of Sandt's discovery of a sharp instrument in his cell. The reason the prosecutor elicited this testimony became clear in her closing.

> "We also heard from Brian Snider that Mr. Zepeda, who clearly knew how to avail himself of this inmate appeal process, the small claims litigation, after this incident on February 15, 2009, never appealed the disciplinary writeup, the 115, which was something he was fully able to do on one of these appeal forms. Never did. Never tried to. [¶] Brian Snider talked about these rejected appeals that inmates were given a chance to rectify. He looked through those. Nothing there either. *Isn't it reasonable to assume that an inmate like Mr. Zepeda, well-versed in the appellate process and the litigation process, if he believed that he had been wronged, would have taken action*?" (Italics added.)

The inference the prosecutor suggested to the jury was that Zepeda must be guilty because he did not appeal the disciplinary action filed against him. In other words, because Zepeda remained silent, the prosecutor asked the jury to infer Zepeda was guilty. Zepeda asserts the prosecutor's remark impermissibly violated his constitutional rights as established in *Doyle v. Ohio* (1976) 426 U.S. 610 (*Doyle*).

In *Doyle* the defendant was arrested and advised of his right to remain silent as required by *Miranda v. Arizona* (1976) 384 U.S. 436, 467-473. The defendant did not make a statement to the police but testified at trial he was not guilty of the crime and was being framed by a police informant. The prosecution cross-examined the defendant, focusing, in part, on why he did not tell the police he was being framed when he was arrested. The Supreme Court reversed the conviction.

> "Despite the importance of cross-examination, we have concluded that the *Miranda* decision compels rejection of the State's position. The warnings mandated by that case, as a prophylactic means of safeguarding Fifth Amendment rights, [citation], require that a person taken into custody be

advised immediately that he has the right to remain silent, that anything he says may be used against him, and that he has a right to retained or appointed counsel before submitting to interrogation. Silence in the wake of these warnings may be nothing more than the arrestee's exercise of these *Miranda* rights. Thus, every post-arrest silence is insolubly ambiguous because of what the State is required to advise the person arrested. [Citation.] Moreover, while it is true that the *Miranda* warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings. In such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial." (*Doyle, supra,* 426 U.S. at pp. 617-618, fns. omitted.)

*Doyle* does not apply here because Zepeda did not testify, and his silence was not used to impeach his testimony. Instead, we think the situation presented implicates Zepeda's Fifth Amendment right to remain silent as the parameters of that right were established in *Griffin v. California* (1965) 380 U.S. 609 (*Griffin*).

The prosecutor in *Griffin* argued, and the trial court instructed the jury, that the defendant's silence could be used as evidence of his guilt. The Supreme Court held these actions violated the defendant's Fifth Amendment rights because to permit such comments "is a penalty imposed by courts for exercising a constitutional privilege. It cuts down on the privilege by making its assertion costly. It is said, however, that the inference of guilt for failure to testify as to facts peculiarly within the accused's knowledge is in any event natural and irresistible, and that comment on the failure does not magnify that inference into a penalty for asserting a constitutional privilege. [Citation.] What the jury may infer, given no help from the court, is one thing. What it may infer when the court solemnizes the silence of the accused into evidence against him is quite another." (*Griffin, supra,* 380 U.S. at p. 614.)

If the prosecutor's argument did not violate *Griffin*, it came perilously close to doing so. Nonetheless, we need not determine if *Griffin* was violated because, even if it was, reversal is not required.

5.

We review errors under both *Griffin* and *Doyle* under the standard set forth in *Chapman v. California* (1967) 386 U.S. 18, 24, i.e., we review this possible error to determine whether it was harmless beyond a reasonable doubt. (*People v. Delgado* (2010) 181 Cal.App.4th 839, 854.)

The inference the prosecutor asked the jury to draw was very weak. There are numerous reasons Zepeda may have decided not to appeal the disciplinary action, primarily, the possibility of a criminal action being filed. In addition, the comment made by the prosecutor was brief, and not repeated. Therefore, in all probability the jury ignored the prosecutor's suggestion.

Moreover, the case against Zepeda was overwhelming. Sandt testified he searched Zepeda's cell and found the sharp item concealed under the top bunk. Zepeda did not directly attack this testimony; instead, he attempted to cast doubt on Sandt's veracity by suggesting Sandt planted the evidence to get even with Zepeda for suing Sandt in small claims court. But all of the evidence related to the small claims action suggested otherwise. Sandt had little memory of the matter. He was not required to appear in small claims court because the prison undertook his representation. Moreover, Sandt was not exposed to personal liability because he simply followed the prison's rules. Finally, the prison prevailed in the action, so no money judgment was issued against Sandt.

On top of these facts, Zepeda already was serving a sentence of 50 years to life and was classified as a level four inmate. As a result of his classification, he spent almost his entire day in his cell and was permitted very limited time to exercise. If Sandt was inclined to seek revenge for this perceived slight, it is unclear what would have been accomplished by planting a sharp instrument in Zepeda's cell. It defies common sense to suggest these circumstances would cause Sandt to hold a grudge against Zepeda for years and motivate him to plant incriminating evidence against Zepeda.

Accordingly, we conclude beyond any possible doubt any error that may have occurred was harmless.

## II.    *Pitchess*[3] **Motion**

Zepeda made a motion pursuant to *Pitchess* to discover Sandt's personnel file. The trial court granted the motion to the extent it sought information suggesting Sandt had a trait for "false report writing or dishonesty."  After properly swearing the witness, the trial court reviewed the records produced by the custodian of records for CCI Tehachapi.  The trial court concluded there were no documents responsive to Zepeda's request in Sandt's personnel file.

The parties agree we should review the records produced by CCI Tehachapi to determine whether the trial court abused its discretion in concluding there were no responsive documents in Sandt's personnel file.  (*People v. Samayoa* (1997) 15 Cal.4th 795, 827.)  We have done so and conclude there were no materials so clearly pertinent to the issues raised by Zepeda that failure to disclose them was an abuse of discretion.

## DISPOSITION

The judgment is affirmed.

_____
CORNELL, Acting P.J.

WE CONCUR:


_____
GOMES, J.


_____
POOCHIGIAN, J.

---

[3]*Pitchess v. Superior Court* (1974) 11 Cal.3d 531.